IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JON YOUNG,<br><br>Defendant. | No. CR08-0004<br><br>REPORT AND RECOMMENDATION REGARDING MOTION TO SUPPRESS |

## TABLE OF CONTENTS

I. INTRODUCTION.................................... 1

II. PROCEDURAL HISTORY............................ 2

III. ISSUE PRESENTED................................ 2

IV. RELEVANT FACTS................................. 2

V. DISCUSSION...................................... 5
   A. *Fifth Amendment -- Self-Incrimination*............. 5
   B. *Sixth Amendment -- Right to Counsel*.............. 9

VI. SUMMARY........................................ 10

VII. RECOMMENDATION............................... 11

## I. INTRODUCTION

On the 1st day of April 2008, this matter came on for hearing on the Motion to Suppress Evidence (docket number 14) filed by the Defendant on February 11, 2008. The Government was represented by Assistant United States Attorney Patrick Reinert. Defendant Jon Young appeared personally and was represented by his attorney, Stephen A. Swift.

1

## II. PROCEDURAL HISTORY

On January 9, 2008, Defendant Jon Young was charged by Indictment (docket number 1) with one count of manufacture and attempt to manufacture methamphetamine, and one count of possession of pseudoephedrine with the intent to manufacture methamphetamine. Defendant entered a plea of not guilty and trial was scheduled for March 10, 2008. On February 11, 2008, Defendant timely filed the instant Motion to Suppress Evidence. A Superseding Indictment (docket number 32) was filed on March 5, 2008, adding a third count of conspiracy to manufacture five grams or more of methamphetamine within 1,000 feet of a protected property. Amendments were also made to Counts 1 and 2. The trial was continued and is now scheduled to begin on April 21, 2008.

## III. ISSUE PRESENTED

In his instant Motion to Suppress Evidence, Defendant claims that he requested legal counsel at some time during a custodial interrogation, but an attorney was not provided. Accordingly, Defendant argues that any statements made to law enforcement officers were in violation of his Fifth and Sixth Amendment rights.[1]

## IV. RELEVANT FACTS

During the early afternoon of May 7, 2007, Cedar Rapids police officers, including the Special Response Team, executed a search warrant at Defendant's residence. Four or five persons were present in the residence at the time the search was executed, including Defendant. The occupants of the residence were handcuffed and placed in the living room while the search was ongoing.

Sergeant Anthony Robinson, who was the command officer at the scene, testified that after fifteen or twenty minutes, he took Defendant into the kitchen to be interviewed.

---

[1] The Motion to Suppress Evidence, which was filed by another attorney representing Defendant at that time, includes a reference to statements made "on or about December 8, 2003." At the instant hearing, however, Mr. Swift confirmed that the reference was inadvertent and the statements in dispute were made on or about May 7, 2007.

According to Sergeant Robinson, it is common to separate persons at the scene prior to any interrogation. Investigator Chip Joecken of the Cedar Rapids Police Department was also present during the interview.

Sergeant Robinson testified that he first gave Defendant a *Miranda* warning from memory. That is, he did not read off a card or ask Defendant to sign a written waiver. According to Sergeant Robinson, this is common practice when conducting field interviews. Sergeant Robinson could not recall if Defendant verbally acknowledged the warning, but he shook his head indicating understanding. Defendant then responded to Sergeant Robinson's questions. Defendant acknowledged that his name was "on the lease" and he would spend several nights there each week. Defendant denied any knowledge regarding contraband which was discovered in the basement, however, or any knowledge regarding drug activity. According to Sergeant Robinson, the initial interview lasted only about five minutes. Defendant was then returned to the living room.

After a period of time, Sergeant Robinson was notified by another officer that Defendant wanted to speak with him again. Defendant was then taken back to the kitchen, where he was provided with water, at his request. Defendant was not given a second *Miranda* warning at that time. Sergeant Robinson used a normal conversational tone with Defendant, because he did not want the persons in the living room to overhear their discussion. On a scale of one to ten, with ten being the most alert, Sergeant Robinson opined that Defendant was an eight or nine. Defendant had no difficulty responding to questions and did not seem to be impaired in Sergeant Robinson's view. When asked whether Defendant appeared to be under the influence of drugs, Sergeant Robinson responded "not that I could tell." In this second interview at the scene, Defendant started "making admissions." After just a few minutes, Sergeant Robinson determined that Defendant should be transported to the police station to be formally interviewed.

After being delivered to the police station, Defendant was placed in an interview room. He was subsequently interrogated by Investigators Dale Moyle and Nathan Juilfs. According to Investigator Moyle, Defendant initially requested a Pepsi, which was

3

provided to him. Investigator Moyle then asked Defendant if he had been given his *Miranda* warning and Defendant responded "Yes." Nonetheless, Investigator Moyle gave Defendant a "refresher" warning, by reading Defendant his *Miranda* rights from a card published by the Drug Enforcement Administration. According to Investigator Moyle, he asked Defendant whether he understood his rights and Defendant nodded and said "Yeah." Defendant was then asked whether he wished to answer the investigator's questions and Defendant made a similar response.

Investigator Moyle testified that the interrogation lasted 30-45 minutes. Investigator Juilfs estimated the length of the interview at "roughly an hour." Both investigators testified that Defendant was alert during the interview, although he appeared somewhat tired. According to Investigator Moyle's notes, Defendant told him that he had gone "48 hours without sleep." Similarly, Investigator Juilfs' notes indicate that Defendant "last slept couple of nights ago." Defendant admitted to the investigators that he had been using methamphetamine, however, and both investigators testified that it was not uncommon for methamphetamine users to stay awake and remain alert for extended periods of time. Investigator Moyle testified that Defendant was cooperative, although in Moyle's estimation, Defendant was "minimizing" his involvement. According to Investigator Juilfs, Defendant was "coherent [and] answered every question."

Investigator Moyle testified that Defendant never requested an attorney at any time during the questioning. In addition, Defendant never asked that the interrogation stop. Investigator Juilfs also testified that Defendant never requested an attorney and never requested an end to the interview.

At the time of hearing, Defendant called to testify Linda Skaggs, one of the other occupants in the house at the time the search was executed. Ms. Skaggs testified that she was also handcuffed and made to wait in the living room. At some point, she was taken into the kitchen, where she was questioned by an officer. When asked whether she was told of her rights or given any warnings, Ms. Skaggs responded "Not that I recall." On cross-examination, however, Ms. Skaggs testified that "I don't remember" if she was

given her rights and "That's certainly possible." The Government called Investigator Chip Joecken on rebuttal, and he testified that he gave Ms. Skaggs a *Miranda* warning prior to her interview at the scene.

## V. DISCUSSION

### A. Fifth Amendment -- Self-Incrimination

Among the most hallowed rights guaranteed by the United States Constitution is that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. CONST. amend. V. In the landmark case of *Miranda v. Arizona*, 384 U.S. 436 (1966), the United States Supreme Court held that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Id.* at 444. Among other things, the person must be warned that he has a right to remain silent and "that he has a right to the presence of an attorney, either retained or appointed." *Id.* If the person indicates "in any manner and at any stage" that he wishes to consult with an attorney, then "there can be no questioning." *Id.* at 444-445. The Court noted, however, that the defendant may waive his or her rights, "provided the waiver is made voluntarily, knowingly, and intelligently." *Id.* at 444.

The Court in *Miranda* held that not only must an accused be warned of his right to remain silent, he must also be advised of the consequences associated with waiving that right.

> The warning of the right to remain silent must be accompanied by the explanation that anything said can and will be used against the individual in court. This warning is needed in order to make him aware not only of the privilege, but also of the consequences of foregoing it.

*Id.* at 469. Critical to Defendant's right to avoid self-incrimination, however, is his right to representation by counsel.

> The circumstances surrounding in-custody interrogation can operate very quickly to overbear the will of one merely made

5

> aware of his privilege by his interrogators. Therefore, the right to have counsel present at the interrogation is indispensable to the protection of the Fifth Amendment privilege under the system we delineate today.

*Id.* A person who has been advised of this *Miranda* right has been sufficiently apprised of his Sixth Amendment right to counsel. *United States v. Garlewicz*, 493 F.3d 933, 936 (8th Cir. 2007) (citing *Patterson v. Illinois*, 487 U.S. 285 (1988)).

Sergeant Robinson testified that before Defendant was interviewed at the scene, he was orally given a *Miranda* warning. According to Sergeant Robinson, Defendant indicated that he understood his rights and agreed to answer the officer's questions. Similarly, Investigator Moyle testified that he read the *Miranda* warning to Defendant at the police station prior to questioning and Defendant acknowledged understanding of his rights. Investigator Juilfs confirmed that the *Miranda* warning was read to Defendant by Investigator Moyle. The Court finds all three officers to be credible witnesses. Accordingly, the Court finds that Defendant was advised of his rights prior to questioning, acknowledged understanding of those rights, and agreed to respond to questions.[2] Defendant nonetheless claims that his statements are inadmissible because "he advised the police that he wished to have the assistance of a lawyer prior to answering any questions," and none was provided to him.[3]

---

[2] Defendant does not argue that a second *Miranda* warning was required at the scene. There is no need to give a second warning where "no appreciable time had elapsed" between the first and second interviews. *See, e.g., United States v. Nordling*, 804 F.2d 1466, 1471 (9th Cir. 1986).

[3] The Court notes that while Defendant's Motion and supporting Brief refer to a certain sleepiness associated with Defendant during the questioning, there is no claim in the Motion or Brief that Defendant's waiver of his rights was not knowing or voluntary. That is, the sole issue raised in Defendant's Motion and supporting Brief is the continued questioning following his alleged request for counsel.
Even if the claim had been made, however, the Court believes that it is without merit. A suspect may waive his *Miranda* rights, provided that the waiver is knowing, voluntary, and intelligent. *Thai v. Mapes*, 412 F.3d 970, 977 (8th Cir. 2005).

(continued...)

In his Motion, Defendant asserts that "he requested legal counsel." As the Court noted in *Miranda*, if a suspect indicates "in any manner and at any stage" that he wishes to consult with an attorney, then "there can be no questioning." 384 U.S. at 444-445. *See also Davis v. United States*, 512 U.S. 452, 458 (1994) ("If a suspect requests counsel at any time during the interview, he is not subject to further questioning until a lawyer has been made available or the suspect himself reinitiates conversation."). Defendant's claim in this regard fails, however, for a simple reason. There is no evidence that Defendant ever invoked his right to counsel. Sergeant Robinson, Investigator Moyle, and Investigator Juilfs all testified that Defendant never requested an attorney. Defendant offered no evidence to the contrary.

Once a suspect has waived his *Miranda* rights, a subsequent request for counsel must be unambiguous.

> The applicability of the "'rigid' prophylactic rule" of *Edwards* requires courts to "determine whether the accused *actually invoked* his right to counsel. To avoid difficulties of proof and to provide guidance to officers conducting interrogations, this is an objective inquiry. Invocation of the *Miranda* right to counsel "requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the

---

3(...continued)
> A waiver is "knowing and intelligent" where it is made with full awareness of both the nature of the right being abandoned and the consequences of abandoning the right, and a waiver is "voluntary" where the court can determine that the waiver was a product of the suspect's free and deliberate choice, and not the product of intimidation, coercion, or deception.

*Id.* (citing *Moran v. Burbine*, 475 U.S. 412 (1986)).

Despite testimony that Defendant had not slept for a couple of days, all of the officers testified that he was alert and responsive to their questions. Defendant was advised of his rights and was told the consequences of abandoning those rights. The Court finds that Defendant waived his right to remain silent and his right to counsel and knowingly agreed to answer the officers' questions. Furthermore, there is no evidence that Defendant was subject to police intimidation, coercion, or deception, or that his waiver was otherwise involuntary.

> assistance of an attorney." But if a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect might be invoking the right to counsel, our precedents do not require the cessation of questioning.
>
> Rather, the suspect must unambiguously request counsel. As we have observed, "a statement either is such an assertion of the right to counsel or it is not." Although a suspect need not "speak with the discrimination of an Oxford don," he must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney. If the statement fails to meet the requisite level of clarity, *Edwards* does not require that the officers stop questioning the suspect.

*Id.* at 458-459 (emphasis in original) (all citations omitted). *See also Hannon v. Sanner*, 441 F.3d 635, 636 (8th Cir. 2006). There is no evidence to support a finding that Defendant ever requested an attorney.

In support of his argument, Defendant cites *Edwards v. Arizona*, 451 U.S. 477 (1981). There, Edwards was arrested pursuant to a warrant and, after being taken to the police station, was informed of his rights as required by *Miranda*. Edwards stated that he understood his rights, and was willing to submit to questioning. *Id.* at 478. After initially discussing the case with the interrogating officer, however, Edwards said "I want an attorney." At that point, questioning ceased and Edwards was taken to the county jail. *Id.* at 479. The following day, two detectives went to the jail and asked to see Edwards. Edwards initially told the guard that he did not want to talk to anyone, but the guard told him "that he had to" talk to the detectives. Edwards was taken to the detectives, where he was given a second *Miranda* warning. Edwards told the detectives that he was willing to talk and he subsequently implicated himself in the crime. *Id.*

In holding that Edwards' statements were not admissible against him at trial, the Court confirmed the holding in *Miranda* that "the assertion of the right to counsel was a significant event and that once exercised by the accused, 'the interrogation must cease until

8

an attorney is present.'" *Id.* at 485 (citing *Miranda*, 384 U.S. at 474). The principal holding in *Edwards*, however, is that once an accused has requested counsel, questioning must cease unless the subsequent contact is initiated by the accused.

> [W]e now hold that when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights. We further hold that an accused, such as Edwards, having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police.

*Id.* at 484-485.

Thus, *Edwards* deals with the circumstance where the authorities have reinitiated questioning of the Defendant after he has requested counsel. In this case, the officers who interrogated Defendant testified that he did not request an attorney at any time during the questioning. Therefore, *Edwards* has no application in this case.

### B. Sixth Amendment -- Right to Counsel

In his Motion, Defendant argues that continued questioning after his request for legal counsel violated his Fifth and Sixth Amendment rights. In *Miranda*, the Court determined that continued interrogation after an accused requests counsel violates the Fifth and Fourteenth Amendments' prohibition against compelled self-incrimination. *Edwards*, 451 U.S. at 481-482. Defendant's Sixth Amendment right to counsel, however, does not attach until a prosecution begins. *McNeil v. Wisconsin*, 501 U.S. 171, 175 (1991) (The Sixth Amendment "does not attach until a prosecution is commenced, that is, 'at or after the initiation of adversary judicial criminal proceedings--whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.'").

> The Sixth Amendment right to counsel attaches at a preliminary hearing or arraignment. But the Supreme Court has declined to hold that the right attaches at the time of an

arrest. Applying these decisions, this court and other circuits
have repeatedly held that the right does not attach with an
arrest, even an arrest preceded by the filing of a complaint
under Rule 3 of the Federal Rules of Criminal Procedure.

*Beck v. Bowersox*, 362 F.3d 1095, 1102 (8th Cir. 2004) (all citations omitted). In the instant action, a prosecution had not yet begun and, therefore, Defendant's Sixth Amendment right to counsel had not yet attached. In any event, as set forth above, the Court finds as a factual matter that Defendant never requested counsel.[4]

## VI. SUMMARY

In summary, the Court finds that Defendant was warned of his *Miranda* rights prior to being questioned at the scene and was warned again of his *Miranda* rights prior to being questioned at the police station. In both circumstances, Defendant indicated that he understood his rights and agreed to answer questions posed to him. Accordingly, the

---

[4] As set forth in footnote 3 above, the only claim asserted by Defendant in his Motion and supporting Brief is that questioning continued following his alleged request for counsel. Defendant does not claim that his "will was overborne," that the statement was "the product of coercive law enforcement activity," or that his statement was otherwise made involuntarily.

The standard to be applied by the Court in determining whether a statement is made voluntarily was summarized in *United States v. LeBrun*, 363 F.3d 715 (8th Cir. 2004):

"A statement is involuntary when it was extracted by threats, violence, or express or implied promises sufficient to overbear the defendant's will and critically impair his capacity for self-determination."

Whether a confession is involuntary is judged by the totality of the circumstances. The court must look at the "conduct of the officers and the characteristics of the accused." The government bears the burden of persuasion and must prove by a preponderance of the evidence that the challenged statements were voluntary.

*Id.* at 724 (internal citations omitted). *See also United States v. Hyles*, 479 F.3d 958, 966 (8th Cir. 2007).

Even if the issue had been raised by Defendant in his Motion, the Court concludes that the Government has proven by a preponderance of the evidence that Defendant's statements at the scene and at the police station were made voluntarily.

Court concludes that Defendant waived his *Miranda* rights on each occasion. The Court further finds that Defendant did not subsequently invoke his right to counsel and, therefore, cannot successfully argue that his Fifth Amendment right against compelled self-incrimination was violated. Defendant's Sixth Amendment right to counsel had not yet attached.

## VII. RECOMMENDATION

For the reasons set forth above, I respectfully recommend that the District Court **DENY** the Motion to Suppress Evidence (docket number 14) filed by the Defendant on February 11, 2008.

The parties are advised, pursuant to 28 U.S.C. § 636(b)(1)(B), that within ten (10) days after being served with a copy of this Report and Recommendation, any party may serve and file written objections with the District Court.

DATED this 3rd day of April, 2008.

JON STUART SCOLES
United States Magistrate Judge
NORTHERN DISTRICT OF IOWA